IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID MYERS, JR. | ) | |
| | ) | |
| Claimant, | ) | |
| | ) | 17 CV 4908 |
| v. | ) | |
| | ) | Magistrate Judge Michael T. Mason |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of the U.S. Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff David Myers, Jr. ("Claimant") filed a motion for summary judgment seeking reversal of the final decision of the Commissioner of Social Security ("Commissioner"), denying his claim for disability benefits. The Commissioner has filed a cross-motion asking the Court to uphold the decision of the Administrative Law Judge ("ALJ"). For the reasons set forth below, Claimant's motion for summary judgment (Dkt. 13) is granted and the Commissioner's motion for summary judgment (Dkt. 20) is denied.

I. Background

A. Procedural History

Claimant filed his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on September 5, 2013, alleging that his disability began on January 9, 2013. (R. 177-89.) Claimant's applications were denied initially and on reconsideration. (R. 110-14, 118-21.) Claimant requested a hearing before an ALJ, which was held on April 4, 2016. (R. 30-57.) On June 24, 2016, the ALJ issued a

1

written decision finding that Claimant was not disabled. (R. 10-29.) On May 4, 2017, Claimant's request for review by the Appeals Council was denied, making the ALJ's decision the final decision of the Commissioner. (R. 1-6.) This action followed.

### B. Relevant Medical Evidence

#### 1. Examining and Treating Sources

Claimant filed for benefits after suffering from depression following the death of his wife in 2012. (R. 513.) In March of 2013, Claimant was hospitalized for suicidal ideation among other things, and the hospital psychiatrist Mehta Harsha, M.D., diagnosed him with major depression, recurrent with suicidal potential. (R. 332.) Following this hospital stay, Claimant began seeing Dr. Milton Daugherty, who cleared Claimant for work as of April 22, 2013. (R. 501.) Claimant stopped seeing Dr. Daugherty due to insurance issues. (R. 468.) In June of 2014, Claimant again sought treatment for his depression, and his primary care physician, Dr. Lionel Barberousse, diagnosed anxiety and depression, psychotic. (R. 427-31.) He prescribed three psychiatric medications after Claimant reported hearing voices telling him to hurt himself. (R. 427-31.)

One month later, in July of 2014, Claimant began seeing psychiatrist Dr. Carl Bell (R. 468.) Dr. Bell diagnosed Claimant with depressive disorder, NOS; anxiety disorder, NOS; and mixed development disorder. (R. 469.) Dr. Bell also noted a severe memory impairment, impaired intellectual functioning, depressed and blank mood, flat affect, and slowed motor activity. (*Id*.) In October of 2014, Dr. Bell noted that Claimant had poor judgment and insight, bland mood, and impaired intellectual functioning. (R. 466.) In January of 2015, Claimant stated he was losing his home. (R. 464.) At this time, Dr.

2

Bell again noted impaired memory and impaired intellectual functioning. (*Id*.) In April of 2015, the utilities in Claimant's home had been shut off, and he began sleeping in his car. (R. 462.) Dr. Bell stated he was "intellectually challenged" and found a minor impairment in memory and poor judgment and insight. (*Id*.) Dr. Bell also stated he was easily distractible. (*Id*.) By July of 2015, Claimant was completely homeless, and Dr. Bell again noted he was living in his car, was easily distractible, and was impaired in memory and intellectual functioning. (R. 460.) Dr. Bell continued to note that Claimant's depression was worse due to his homelessness through January of 2016. (R. 456, 458.)

On July 15, 2015, Dr. Bell completed a Mental Impairment Questionnaire. (R. 471.) He repeated his diagnoses of depressive disorder, NOS; anxiety disorder, NOS; and mixed development disorder. (*Id*.) He also noted that Claimant was easily distractible, had poor memory, sleep disturbance, recurrent panic attacks, difficulty thinking or concentrating, and generalized persistent anxiety. (*Id*.) He assessed a low IQ or reduced intellectual functioning. (*Id*.) He opined that Claimant would miss work about once a month due to his impairments. (*Id*.) He also indicated that Claimant would be moderately limited in the ability to sustain ordinary routine work without special supervision. (*Id*.) Dr. Bell opined that Claimant would have no restriction in activities of daily living, mild difficulties in maintaining social functioning, mild deficiencies of concentration, persistence, or pace, and would have one or two episodes of decompensation in work settings. (R. 473.)

   **2. Consultative Examiner**

Dr. Kenneth M. Levitan completed a consultative examination on November 24, 2013. (R. 414.) Dr. Levitan noted underlying anxiety. (*Id*.) He also noted that Claimant became more "overtly depressed" with underlying anger as the interview progressed. (*Id*.) Claimant reported occasional hallucinations and paranoid concerns. (*Id*.) Claimant also acknowledged a history of alcohol and drug abuse. (R. 415.) Claimant also reported that his 29 year-old daughter died five years ago from heart disease, and Dr. Levitan noted that Claimant's sadness increased after reporting it. (R. 416.) Claimant explained that he managed his own finances, and was capable of washing clothes, cooking, cleaning, and mopping. (*Id*.) Dr. Levitan noted difficulty in concentrating, fair memory, limited insight, good judgment, and an affect that was outgoing, very sad, and with "much underlying anger." (R. 417.) Dr. Levitan diagnosed major depression, past chronic alcoholism and chronic alcohol abuse, chronic drug abuse, and hypertension. (*Id*.) He stated that Claimant could perform simple and routine tasks, would have difficulty handling moderate work pressure and stress, and could follow, understand, and retain instructions. (*R. 417*.)

### 3. Agency Physicians

Dr. Kirk Boyenga reviewed Claimant's medical records and assessed his Residual Functional Capacity ("RFC") on December 6, 2013. (R. 58-68.) He opined that Claimant was partially credible, finding him capable of performing simple tasks. (R. 64.) He believed that Claimant's adaptation abilities are limited, but that he could complete routine, repetitive tasks and could follow instructions. (*Id*.) He further opined that Claimant had moderate limitations in his ability to understand and remember detailed instructions; maintain attention and concentration for extended periods; work in

4

coordination with or in proximity to others without being distracted; to complete a normal workday and workweek without interruptions from psychologically based symptoms; and to interact appropriately with the general public. (R. 66-67.) On reconsideration, Dr. Thomas Low affirmed Dr. Boyenga's assessment with little discussion. (R. 82-93.)

### C. Claimant's Testimony

Claimant appeared at the administrative hearing with counsel on April 5, 2016. Claimant testified that he currently lives in his car, and that he had done so for two and a half years or more. (R. 39-40.) Claimant's car is parked outside of a friend's house, and it no longer is a working vehicle. (R. 40.) Claimant stated that he could take showers, use the bathroom, or microwave food either at his friend's house or at his brother-in-law's house. (*Id*.)

Claimant testified that his only previous job was at Keebler, where he put boxes on the "skids," tagged them, and took them to the shipping area. (R. 40-41.) Claimant retired early in 2013 when he felt he could no longer work. (R. 41.) Claimant reported that he lived off food stamps after he lost his house. (R. 42.) Claimant stated he was on medication for depression, anxiety, and hypertension, but that he was receiving no counseling. (*Id*.) He had also been in touch with Social Services about low-income housing. (R. 43.)

Claimant reported having no social life and that he was not close with his family. (R. 46.) He stated he has not looked for a job since he retired from Keeble because he did not have the desire to get a job. (*Id*.) Claimant walked from his car to his brother-in-law's house or to another friend's house, which amounted to a couple of miles. (R. 47.) He also stated that he did not leave his car if it rained. (R. 48.) Claimant could go to

5

the store if he borrowed a car, where he would buy TV dinners to store at his friend's house. (*Id*.) When he had the chance to cook, Claimant stated he could fry chicken on a skillet. (R. 49.) He also reported that he occasionally watched television at his friend's house. (*Id*.)

Claimant testified that his medication only worked for a few hours, and that even on his medication, he did not feel well enough to work at his old job. (R. 50, 53.) He also stated that he had a hard time being around people and did not have the energy or desire to work or do much else. (R. 51-52.)

### D. Vocational Expert Testimony

Vocational Expert ("VE") Pam Tucker also appeared at the hearing. The ALJ asked the VE to consider someone of Claimant's age, education, and work history, who could perform simple, routine tasks, make simple work-related decisions, and be around the public occasionally. (R. 55.) The VE stated that such an individual would be incapable of performing Claimant's past work, as his past work required more than simple, routine tasks. (*Id.*) The VE testified that such an individual could, however, perform work as a laundry worker, machine feeder, or transportation cleaner. (R. 56.) Next, the ALJ asked the VE to consider the same limitations in the first hypothetical, but add that the individual would be absent at least two days a month. (*Id.*) The VE stated that all competitive work would be precluded. (*Id*.)

## II. Analysis

### A. Standard of Review

This Court will affirm the ALJ's decision if it is supported by substantial evidence and free from legal error. 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940

6

(7th Cir. 2002). Substantial evidence is more than a scintilla of evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). We must consider the entire administrative record, but will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner." *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (citing *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)). This Court will "conduct a critical review of the evidence" and will not let the Commissioner's decision stand "if it lacks evidentiary support or an adequate discussion of the issues." *Lopez*, 336 F.3d at 539 (quoting *Steele*, 290 F.3d at 940).

In addition, while the ALJ "is not required to address every piece of evidence," he "must build an accurate and logical bridge from evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must "sufficiently articulate [his] assessment of the evidence to assure us that the ALJ considered the important evidence ... [and to enable] us to trace the path of the ALJ's reasoning." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (per curiam) (quoting *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985)).

**B. Analysis under the Social Security Act**

In order to qualify for SSI or DIB, a claimant must be "disabled" under the Social Security Act (the "Act"). A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). In determining whether a

claimant is disabled, the ALJ must consider the following five-step inquiry: "(1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether he can perform past relevant work, and (5) whether the claimant is capable of performing any work in the national economy." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). The claimant has the burden of establishing disability at steps one through four. *Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001). If the claimant reaches step five, the burden then shifts to the Commissioner to show that "the claimant is capable of performing work in the national economy." *Id.* at 886.

Here the ALJ applied the five-step process to reach his decision denying Claimant's application for benefits. Prior to step one, the ALJ found that Claimant met the insured status requirements through December 31, 2017. (R. 15.) At step one, the ALJ determined that Claimant had not engaged in substantial gainful activity since January 9, 2013, the alleged onset date. (*Id*.) At step two, the ALJ determined that Claimant had the severe impairment of depression. (*Id.*) The ALJ found that Claimant's hypertension and obesity were non-severe. (R. 16.) At step three, the ALJ concluded that Claimant did not have an impairment or combination of impairments that meets or medically equals the severity of one of the Commissioner's listed impairments. (*Id*.)

The ALJ went on to assess Claimant's RFC, finding Claimant had the residual functional capacity to perform a full range of work at all exertional levels, but with the following nonexertional limitations: he can perform simple, routine tasks, make simple work-related decisions, and be around the public occasionally. (R. 18.) At step four,

8

the ALJ found that Claimant was unable to perform his past relevant work. (R. 21.) Finally, the ALJ found that Claimant could perform work in the national economy, including in the positions of laundry worker, machine feeder, or transportation cleaner. (R. 23.)

Claimant now argues that the ALJ's decision is not supported by substantial evidence and requires remand because (1) the ALJ's hypothetical to the VE and RFC failed to account for Claimant's limitations in concentration, persistence, or pace, (2) the ALJ improperly weighed Dr. Daugherty's opinion, and (2) the ALJ erred in his subjective symptom determination by improperly relying on activities of daily living. We address Claimant's argument below, ultimately finding that the ALJ's opinion should be remanded.

### C. The ALJ Erred in His Hypothetical to the VE with Respect to Claimant's Moderate Limitations in Concentration, Persistence, or Pace.

Claimant first contends that the ALJ failed to account for his moderate limitations in concentration, persistence, or pace in his hypothetical to the VE. For the reasons that follow, the Court concludes that the ALJ's hypothetical questions to the VE did not properly include those limitations, necessitating remand.

At step five, the Commissioner must demonstrate the existence of "significant numbers of jobs in the national economy." 20 C.F.R. § 404.1545(a)(5)(ii). To do so, the ALJ may rely on the testimony of a VE, to whom he poses hypothetical questions that account for the claimant's age, education, work history, and RFC. 20 C.F.R. § 404.1520(a)(4)(v), (g). In the Seventh Circuit, "both the hypothetical question posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014); *see*

9

also *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010) ("Our cases, taken together, suggest that the most effective way to ensure that the VE is apprised fully of the claimant's limitations is to include all of them directly in the hypothetical"); *Indoranto v. Barnhart*, 374 F.3d 470, 473-74 (7th Cir. 2004) ("If the ALJ relies on testimony from a vocational expert, the hypothetical question he poses to the VE must incorporate all of the claimant's limitations supported by the medical evidence in the record.").

"Among the mental limitations that the VE must consider are deficiencies of concentration, persistence, or pace." *Varga v. Colvin*, 794 F.3d 809, 813-14 (7th Cir. 2015). Although it is not necessary that the ALJ use the precise terminology of "concentration," "persistence," or "pace," the Court cannot assume that a VE is apprised of such limitations unless he or she has independently reviewed the medical record or has heard testimony that directly addressed Claimant's limitations in concentration, persistence, and pace. *Id.* at 814; *Yurt*, 758 F.3d at 857; *O'Connor-Spinner,* 627 F.3d at 619. Here, the VE testified to having listened to Claimant's testimony regarding work history, but nothing else. (R. 55.) There was no indication that the VE independently reviewed any portion of the record. Furthermore, although the VE was present at the hearing and thus heard Claimant's testimony, the record does not indicate that the VE based his conclusions on anything other than the ALJ's hypotheticals. *See Simila v. Astrue*, 573 F.3d 503, 521 (7th Cir. 2009).

Whereas here, the ALJ determined that Claimant had moderate difficulties with concentration, persistence, or pace, the ALJ must include those limitations in the hypothetical posed to the VE. *See O'Connor-Spinner*, 627 F.3d at 619. However, the ALJ only asked the VE to consider an individual limited to simple, routine tasks, simple

10

work-related decisions, and only occasional interactions with the public. (R. 18.) These terms refer to "unskilled work," which the regulations define as work that can be learned by demonstration in less than 30 days. 20 C.F.R. §§404.1568, 404.1520. "[W]hether work can be learned in this manner is unrelated to the question of whether an individual with mental impairments – *e.g.,* with difficulties maintaining concentration, persistence, or pace – can perform such work." *Varga*, 794, F.3d at 814. For this reason, the Seventh Circuit has repeatedly rejected the idea that "confining the claimant to simple, routine tasks and limited interactions with others adequately capture[] temperamental deficiencies and limitations in concentration, persistence, and pace." *Yurt*, 758 F.3d at 858-59 (*citing Stewart v. Astrue*, 561, 679, 685 (7th Cir. 2009) (collecting cases)).

The Commissioner does not address Claimant's objection to the hypothetical to the VE. Rather, the Commissioner focuses on arguments relating to the validity of the ALJ's RFC determination. The Commissioner argues that the ALJ properly relied on opinions from the state agency doctors and the consultative examiner, who all concluded that Claimant could perform simple, routine and repetitive tasks. (R. 20, 68, 78, 91, 103, 417.) While this is true, this does not address the issue of whether the VE was apprised of Claimant's moderate limitations in concentration, persistence, or pace. *See Yurt,* 758 F.3d at 858 ("The first and most obvious problem with the Commissioner's argument is that it focuses entirely on the ALJ's mental RFC when it is in fact the *hypothetical* she posed to the VE that [claimant] attacks.") Claimant's treating physician noted that he had poor memory, was easily distractible, and had difficulty with thinking and concentration. (R. 460, 464, 466, 469, 471.) The ALJ provided no explanation as to how these difficulties were accommodated by limitations to simple,

11

routine tasks. As stated above, limiting Claimant to simple, routine tasks does not adequately apprise the VE of Claimant's moderate limitations in concentration, persistence, or pace. This error necessitates remand.[1] *See O'Connor-Spinner*, 627 F.3d at 620-21.

### D. The ALJ Improperly Weighed the Opinion of Dr. Daugherty.

Next, Claimant argues that the ALJ improperly gave great weight to the opinion of Dr. Milton Daugherty, M.D. At the time of the hearing, the records indicated that Dr. Daugherty saw Claimant during his March 29-31, 2013 hospitalization. (R. 304.) He also saw him again on April 8, at which time he opined that Claimant would be capable of returning to work on April 22. (R. 300.) Claimant asserts that Dr. Daugherty's opinion should not be given great weight, as he only saw Claimant during the time between March 29 and April 8, 2013. Furthermore, Claimant did in fact return to work on April 22, 2013. However, shortly after that, Claimant determined that he was unable to continue working, and he stopped working on June 28, 2013. (R. 223.) The ALJ states that Dr. Daugherty's opinion deserves great weight because it was consistent with the improvement that occurred after his hospitalization. (R. 20.) While Claimant did experience improvement after his hospitalization for suicidal ideation, his depression worsened shortly after Dr. Daugherty's limited relationship with Claimant.

Claimant argues that the ALJ failed to analyze the regulatory factors in 20 C.F.R. §§ 404.1527 and 416.927. These factors include length of treatment relationship and

---

[1] Claimant also briefly argues that the ALJ improperly accounted for consultative examiner Dr. Levitan's opinion that Claimant would have difficulty handling moderate work pressure and stress. (R. 417.) However, as the Commissioner points out, Dr. Levitan provided no functional limitations related to stress, but did state that Claimant could perform simple and routine tasks despite his difficulty in handling pressure and stress. (R. 417.) Therefore, the ALJ properly accounted for Dr. Levitan's opinion.

12

frequency of examination, which was short. The Commissioner responds that Dr. Daugherty's opinion is consistent with future mental examinations that yielded "unremarkable findings, such as normal mood and affect." (R. 20.) However, the ALJ ignores significant portions of the record wherein Claimant's depression is noted. In June of 2014, Claimant was diagnosed with anxiety and depression, psychotic. (R. 427-31.) He was given three psychiatric medications after reporting hearing voices telling him to hurt himself. (R. 427-31.) One month later, in July of 2014, Claimant was diagnosed with depressive disorder, NOS; anxiety disorder, NOS; and mixed development disorder. (R. 469.) Claimant also was noted to have a severe memory impairment, impaired intellectual functioning, depressed and blank mood, flat affect, and slowed motor activity. (*Id*.) The ALJ impermissibly cherry-picked information to support his conclusion that Dr. Daugherty's opinion deserved great weight, without addressing the regulatory factors or the multiple records indicating Claimant's depression may have warranted functional limitations.

**E. The ALJ Erred in Relying on Claimant's Activities of Daily Living in the Subjective Symptoms Analysis.**

Finally, Claimant asserts that the ALJ's subjective symptom analysis was proper. The Courts give ALJ credibility determinations deference based on the ALJ's ability to hear, see, and assess witnesses. *Shideler v. Astrue*, 688 F.3d 306, 311 (7th Cir. 2012.) An ALJ's credibility determination will only be overturned if it is patently wrong. *Elder v. Astrue,* 529 F.3d 408, 413-14 (7th Cir. 2008). The ALJ must "explain [his] decision in such a way that allows us to determine whether []he reached [his] decision in a rational manner, logically based on [his] specific findings and the evidence in the record." *McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011). The ALJ should consider the

13

entire case record and give specific reasons for the weight given to an individual's statements. *See Schmidt v. Barnhart*, 395 F.3d 737, 746 (7th Cir. 2005) (stating that an ALJ must "articulate specific reasons for discounting a claimant's testimony as being less than credible"). Factors that should be considered include the objective medical evidence, the claimant's daily activities, allegations of pain, aggravating factors, the types of treatment received, any medications taken, and functional limitations. *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006); *See also* 20 C.F.R. § 404.1529(c)(3). A reviewing court must be mindful that reversal on this ground is appropriate only if the credibility determination is so lacking in explanation or support that it is "patently wrong." *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008).

Claimant argues that the ALJ improperly considered his activities of daily living. The ALJ found that Claimant was capable of driving, praying, making microwave foods, cooking chicken, reading the newspaper, managing his finances, and watching television. (R. 17.) When analyzing Claimant's activities of daily living, the ALJ must explain any perceived inconsistencies between the activities and the medical evidence. *See Voigt v. Colvin,* 781 F.3d 871, 878 (7th Cir. 2015). Here, the ALJ stated that Claimant's activities are ones which typically require at least some level of concentration, persistence, or pace. The ALJ points to Claimant's ability to drive as an ability to read signs, pay attention enough to follow road signs, and obey traffic rules. The ALJ also points to Claimant's ability to use public transportation.

Claimant takes issue particularly with the ALJ's reliance on Claimant's ability to pray as proof of concentration. (R .17.) The ALJ offers no explanation as to how an ability to pray equates to an ability to concentrate for the length of a work day.

Moreover, the ALJ relied on the ability to watch a Cubs game. The Seventh Circuit has expressed that it is "skeptical that the ability to watch television for several hours indicates a long attention span[.]" *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). The ALJ also misstated Claimant's ability to watch TV, as Claimant testified that he only watched a portion of the Cubs game. (R. 49.) The ALJ did not build a logical bridge to explain how Claimant's ability to pray or watch a portion of a baseball game equates to an ability to concentrate for the duration of a work day. Nor has the ALJ explained how an ability to microwave foods equates to an ability to concentrate for a work day. Finally, the ALJ alleges that Claimant's ability to manage his finances shows an ability to maintain concentration, persistence, or pace. (R. 17.) The ALJ ignores the fact that Claimant is homeless and has very little to manage. He testified that he went to grocery stores to buy TV dinners and could go to restaurants to order breakfast, but that he received food stamps to pay for his TV dinners. (R. 45, 48.) The ALJ has exaggerated Claimant's activities of daily living, and he has failed to build a logical bridge between Claimant's daily activities and his ability to work full time.

### III. Conclusion

For the foregoing reasons, Claimant's motion for summary judgment is granted, and the Commissioner's motion for summary judgment is denied. This case is remanded to the Social Security Administration for further proceedings consistent with this Opinion. It is so ordered.

**DATED: December 20, 2019**

**Magistrate Judge Michael T. Mason**